IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| LIFETIME BRANDS, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 2:23-CV-00216-JRG |
| § | |
| QIMA LTD., § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

Before the Court are two motions. The first is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to FED. R. CIV. P. 12(b)(2) (the "First Motion") filed by Defendant QIMA Ltd. (Dkt. No. 14.) After Defendant filed the First Motion, Plaintiff Lifetime Brands, Inc. ("Lifetime") filed an amended complaint and Defendant filed another motion requesting the same substantive relief on the same grounds. (*See* Dkt. Nos. 20, 21.) A later-filed amended complaint moots a motion to dismiss based on that earlier complaint. *See Griffin v. Am. Zurich Ins. Co.*, 697 F. App'x 793, 797 (5th Cir. 2017) ("Once filed, that amended complaint rendered all earlier motions … moot.") Accordingly, the Court finds that the First Motion should be **DENIED-AS-MOOT**.

The second is Defendant's Motion to Dismiss Plaintiff's Amended Complaint for Lack of Personal Jurisdiction Pursuant to FED. R CIV. P. 12(b)(2) (the "Second Motion") filed by Defendant QIMA Ltd. (Dkt. No. 21.) Lifetime opposes the Motion. (*See* Dkt. No. 23.) For the following reasons, the Court finds that the Second Motion should be **CARRIED** until limited jurisdictional discovery is completed.

## II.     BACKGROUND

Plaintiff Lifetime Brands is a Delaware corporation with its primary place of business in New York. (Dkt. No. 20 at ¶ 1.) Defendant QIMA Ltd. is a limited company organized under the laws of the Hong Kong Special Administrative Region with its principal place of business in Hong Kong, China. (*Id.* at ¶ 2.) QIMA Ltd. is a provider of quality assurance and supply chain solutions, operating in 95 countries, including in the United States, with over 40 offices and labs. (*Id.* at ¶ 18.) One such lab is in New York. (Dkt. No. 21 at 15.)

QIMA Ltd. has two relevant subsidiaries, neither of which are named in the complaint. The first, QIMA (US) LLC, is a New York company with its principal place of business in New York. (Dkt. No. 21 at 15; Dkt. No. 21-2 at 3.) The second, QIMA LLC, is also a New York company with its principal place of business in New York. (Dkt. No. 21 at 15; Dkt. No. 21-2 at 4.)

Lifetime alleges that QIMA Ltd. "directly participates in the stream of commerce in the Eastern District of Texas by providing 'quality control along the supply chain' … in [] Wills Point, Texas." (Dkt. No. 20 at ¶ 5 (quotations omitted).) Lifetime includes a picture of stuffed animal giraffes in the First Amended Complaint, seemingly to indicate that these are some of the products that QIMA Ltd. provides quality control for. (*See id.* at ¶¶ 5–6.)

Lifetime also alleges that "[u]pon information and belief, QIMA posts job listings for workers, such as Fruit Quality Control Inspectors, to be employed in the State of Texas (*e.g.*, Garland, TX)." (*Id.* at ¶ 7.) Further, Lifetime alleges that "QIMA's website … posts jobs for its various subsidiaries" including subsidiaries which conduct "regular business in the State of Texas." (*Id.* at ¶ 8.)

Next, Lifetime puts forth that QIMA Ltd., "through its subsidiaries, participates yearly in the BRCGS [] Connect event based in Texas." (*Id.*) BRCGS, which stands for "Brand Reputation

2

Compliance Global Standard", is a certification offered by QIMA. (*Id.*; Dkt. No. 23 at 11.) Lifetime contends that QIMA Ltd. "describes how it has been BRCGS-accredited send 2012 and kept a 5-star rating that enabled it to win the Food Safety Americas BRCGS Certification Body of the Year Award in 2021." (Dkt. No. 20 at ¶ 8.) Lifetime also alleges that QIMA Ltd. "publishes Public Regulatory updates that show it complies with various state laws in the states in which QIMA does business, including the laws of Texas (e.g., Texas bedding law requirements)." (Dkt. No. 20 at ¶ 9.)

QIMA Ltd. owns the "QIMA" mark and maintains that it first used the mark in commerce in the United States as early as July 18, 2017. (Dkt. No. 23 at 3–4.) The mark is utilized by two apps accused of infringement and distributed by QIMA Ltd.—QIMA and QIMAone. (*Id.* at 8.) Lifetime contends that these apps are distributed in Texas and across the United States via the Apple App Store and the Google Play Store pursuant to agreements with Apple and Google. (*Id.* at 8–10.)

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). It is the plaintiff's burden to establish that personal jurisdiction exists, but the plaintiff only needs to present facts to make out a *prima facie* case supporting such jurisdiction. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). "The Court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). Additionally, conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff for the purpose of determining whether a *prima facie* case for personal jurisdiction has

been made. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). The rule is well-established that "parties who choose to litigate actively on the merits thereby surrender any jurisdictional objections." *PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 459 (5th Cir. 2001) (citing *General Contracting & Trading Co., LLC v. Interpole, Inc.*, 940 F.2d 20 (1st Cir. 1991)).

There are two steps to determine whether a federal court may exercise personal jurisdiction over a nonresident defendant: (1) the forum state's long-arm statute must confer personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). "As the Texas long-arm statute extends as far as constitutional due process allows," the Court only needs to consider the second step of the inquiry. *Id.*; *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007); *see also Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) ("Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis.").

The due process analysis focuses on the number and nature of a defendant's contacts with the forum to determine if the defendant has sufficient "minimum contacts" such "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 326 (1945). These contacts may give rise to specific or general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014).

General jurisdiction applies to a defendant in "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 917 (2011) (quoting *Int'l Shoe*, 326 U.S. at 318);

4

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n.4 (1984). Thus, general jurisdiction applies in "only a limited set of affiliations with a forum [that] will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 571 U.S. at 137. The Fifth Circuit has also stated that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business" of a defendant. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

Specific jurisdiction is a claim-specific inquiry—meaning that the factual basis for the plaintiff's claim must arise out of or relate to the defendant's substantial contacts with the forum. *Asashi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 109 (1987); *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006) ("Is specific personal jurisdiction a claim-specific inquiry? We conclude that it is. A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim."). The Supreme Court has recently reiterated that:

> there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State. . . . *What is needed . . . is a connection between the forum and the specific claims at issue.*

*Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1781 (2017) (quoting *Goodyear*, 564 U.S. at 919) (internal citations in original omitted) (emphasis added); *see also Walden v. Fiore*, 571 U.S. 277, 284, 290 (2014) ("For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related conduct* must create a substantial connection with the forum State. . . . The proper question is *not* where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.") (emphasis added).

5

To establish specific jurisdiction over a defendant, the plaintiff must demonstrate: "(1) whether the defendant . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008).

"The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.'" *McFadin*, 587 F.3d at 759 (5th Cir. 2009) (quoting *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 469, 470 (5th Cir. 2006)). The plaintiff cannot supply the "only link between the defendant and the forum." *Carmona v. Leo Ship Mgmt.*, 924 F.3d 190, 194 (5th Cir. 2019) (quoting *Walden*, 571 U.S. at 285). Instead, the "defendant himself" must make deliberate contact with the forum. *Id.* (citing *Walden*, 571 U.S. at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985))).

"If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271 (citing *Burger King*, 471 U.S. at 382). To determine whether exercise of personal jurisdiction over the defendant would be unfair or unreasonable, the Court considers: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. *Burger King*, 471 U.S. at 477. Once a plaintiff has established sufficient minimum contacts with the forum, a defendant must make a "compelling case" that exercise of jurisdiction is unfair and

unreasonable. *Dontos v. Vendomation NZ, Ltd.*, 582 F. App'x 338, 343 (5th Cir. 2014) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

Federal Rule of Civil Procedure 4(k)(2) also permits a Court to exercise personal jurisdiction over a defendant; however, "the plaintiff's claim must arise under federal law, the defendant must not be subject to jurisdiction in any state's courts of general jurisdiction, and exercise of jurisdiction must comport with due process." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1412 (Fed. Cir. 2009). Rule 4(k)(2) applies if "'the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible[.]'" *Id*. at 1415 (citation omitted). Thus, the Court may not exercise personal jurisdiction over a defendant pursuant to Rule 4(k)(2) if the defendant identifies another state in which the case could have been brought. *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012).

If there is no jurisdiction within a particular state, substantial contacts with the United States as a whole may satisfy Rule 4(k)(2). Fed. R. Civ. P. 4(k)(2); *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1295–96 (Fed. Cir. 2009). In the absence of a concession to jurisdiction in another state, the Court may use 4(k)(2) to find personal jurisdiction. *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004).

### IV. ANALYSIS

#### A. QIMA Ltd. is Not Subject to General Jurisdiction in Texas

The parties agree that QIMA Ltd. is not subject to the general jurisdiction of the courts of the State of Texas. (*See* Dkt. No. 21 at 5–11; Dkt. No. 23.) Accordingly, the Court finds that QIMA Ltd. is not subject to general jurisdiction.

#### B. QIMA Ltd. is Not Subject to Personal Jurisdiction Under Rule 4(k)(2)

QIMA Ltd. argues that it is "subject to the general jurisdiction of the courts of the State of New York" because of its regular subsidiaries in New York, QIMA (US) LLC and QIMA LLC.

(Dkt. No. 21 at 15.) QIMA Ltd. also notes that it has testing laboratories in New York. (*Id.*) In response, Lifetime argues that QIMA is not subject to jurisdiction in any state court of general jurisdiction in the United States. (Dkt. No. 23 at 13–14.) In reply, QIMA Ltd. re-urges the same points it made in the Second Motion. (Dkt. No. 25 at 5–6.) In sur-reply, Lifetime argues that QIMA has failed to demonstrate why personal jurisdiction in New York is appropriate. (Dkt. No. 27 at 4–5.)

The Court finds that QIMA Ltd. is not subject to jurisdiction under Rule 4(k)(2). Lifetime's argument that QIMA Ltd. has failed to demonstrate why it is subject to the jurisdiction of a court of general jurisdiction in New York is waived because it was made for the first time in sur-reply. *Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*, 2019 WL 2959568, at *3 (E.D. Tex. Apr. 18, 2019) ("It is black-letter law that arguments raised for the first time in a reply brief are waived 'as a matter of litigation fairness and procedure.'" (citation omitted)). QIMA Ltd. laid out particularized arguments in the Second Motion concerning why it was subject to the general jurisdiction of the Courts of the State of New York, and Lifetime did not rebut them in its response brief. (*See* Dkt. No. 21 at 15; Dkt. No. 23 at 13–14.) By making new arguments in its sur-reply, Lifetime has precluded a substantive response from QIMA Ltd.

Further, QIMA Ltd. has adequately shown that it would be subject to the jurisdiction of courts of general jurisdiction of the State of New York. QIMA Ltd. has "regular contacts with New York," including with its subsidiaries located in New York, and "has testing laboratories" in New York. (Dkt. No. 21 at 15.) Lifetime's only counterargument is that contact with subsidiaries is insufficient. (Dkt. No. 27 at 4–5 (citing *MediaZam LLC v. Voices.com, Inc.*, No. 20-CV-1381-PP, 2022 WL 993570, at *13 (E.D. Wis. Mar. 31, 2022) (holding that defendant's affidavit showing a "wholly-owned U.S. subsidiary in the state of Delaware was insufficient to establish an "intent

8

[for the parent corporation] to service the Delaware market.")).) However, QIMA has alleged contacts with New York outside of its subsidiaries. For example, contacts with its testing laboratories. (Dkt. No. 21 at 15.)

Since QIMA Ltd. is subject to the jurisdiction of courts of general jurisdiction of the State of New York, it is not subject to jurisdiction before this Court pursuant to Rule 4(k)(2).

### C. It is Not Clear Whether QIMA Ltd. is Subject to Personal Jurisdiction Under a Stream-of-Commerce Theory

QIMA Ltd. argues that Lifetime cannot establish specific personal jurisdiction. (Dkt. No. 21 at 12–15.) Specifically, QIMA Ltd. argues that it does not deliver any products into Texas, including the stuffed animal giraffes referenced in the amended complaint. (*Id.* at 12–14.) Further, QIMA Ltd. contends that even if it did make the giraffes, the giraffes are not connected to the allegations of infringement in this case. (*Id.* at 13.) Further still, QIMA Ltd. contends that even if it provided quality control along the supply chain as Lifetime alleges, this does not show that QIMA Ltd. placed these products into the stream of commerce. (*Id.*)

Next, QIMA Ltd. argues that any of Lifetime's allegations concerning job postings or tradeshow attendance in Texas do not establish personal jurisdiction because (1) the allegations concern separate entities and (2) these activities are unrelated to Lifetime's claims of infringement. (Dkt. No. 21 at 14.) QIMA Ltd. also urges that Lifetime's allegations relating to QIMA's compliance with Texas' bedding law programs are not connected to Plaintiff's claims of infringement. (*Id.* at 14–15.)

In response, Lifetime argues that QIMA Ltd. is subject to personal jurisdiction in Texas under a "stream-of-commerce theory," which Lifetime maintains is an "independent basis" for personal jurisdiction. (Dkt. No. 23 at 7–13 (quoting *Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*, No. 5:08-CV-26, 2009 WL 1025467, at *4 (E.D. Tex. Mar. 26, 2009)).) Against this backdrop

9

Lifetime proceeds to argue a number of facts that demonstrate that QIMA Ltd. has purposefully entered the Texas stream of commerce. (*Id.* at 7–13.)

First, Lifetime notes that QIMA Ltd. admits that it uses the "QIMA" mark in the United States, and not its subsidiaries. (Dkt. No. 23 at 7–8, 10–11.) Next, Lifetime notes that QIMA Ltd.'s website confirms that it possesses "a global reach spanning 100+ countries," including in the United States and Texas, and elsewhere notes that "QIMA [Ltd.] now employs more than 5,000 employees in 60 offices and labs and operates in over 100 countries." (*Id.* at 8 (citing Dkt. No. 23-4 at 1–2).)

Lifetime then argues that the accused "QIMA / QIMAone app is available for download in Texas" (and anywhere in the United States). (*Id.* at 11.) Further, Lifetime contends that QIMA Ltd. uses its inspection technology in global streams of commerce, "at least one of which includes a high likelihood of onsite inspection to perform 'quality control along the supply chain,' in Willis Point, Texas." (*Id.* (citing Dkt. No. 20 at ¶ 8).)

Next, Lifetime urges that the tradeshows in Texas are "directly related" to the BRCGS certification offered by QIMA Ltd. (*Id.*) Lifetime also contends that the "only possible intended audience for 'safety standards and regulations' relating to Texas's Bedding Law Requirements would be Q[IMA Ltd.]'s customers and partners who conduct business in Texas." (*Id.* at 12 (citing Dkt. No. 21-6 at 7).) Lifetime notes that QIMA Ltd. posts jobs in Texas and urges that exercising jurisdiction over QIMA Ltd. would not be unreasonable. (*Id.*)

In reply, QIMA Ltd. contends that the patents asserted in the amended complaint are not directed to any discrete product placed into a nationwide distribution network by QIMA Ltd. or any of its owned affiliates. (Dkt. No. 25 at 1–3.) Next, QIMA Ltd. argues that Lifetime cites no caselaw supporting its theory that offering apps using the "QIMA" mark in Texas bolsters specific

10

personal jurisdiction. (*Id.* at 3–4.) QIMA Ltd. also again argues that there is no evidence or specific allegation that QIMA Ltd. has introduced a product into a nationwide distribution network that could plausibly be alleged to infringe an asserted patent, or that any such product is available in Texas. (*Id.* at 4–5.)

In sur-reply, Lifetime argues that QIMA Ltd. is responsible for developing the accused QIMA app, placing it into a stream of commerce, and distributing it throughout the United States, including Texas. (Dkt. No. 27 at 1–3.) Thus, Lifetime argues, the QIMA app is a product and it is placed into the stream of commerce for distribution in Texas. (Dkt. No. 27 at 3–4.) Lifetime also argues that that QIMA app is likely used for quality inspections in the District. (*Id.* at 3.)

The Court first finds that the stream-of-commerce theory is not an independent theory of personal jurisdiction, as Lifetime argues. Lifetime relies on *Icon Health* for this proposition. (*See* Dkt. No. 23 at 6–7 (citing *Icon Health*, 2009 WL 1025467, at *4 ("[T]here is a third, independent basis for personal jurisdiction known as the stream[-]of-commerce theory." (citation omitted))).) In turn, the *Icon Health* court relied on *World-Wide Volkswagen* to hold that the stream-of-commerce theory is an independent basis for personal jurisdiction. *See Icon Health*, 2009 WL 1025467, at *8. However, subsequent to *Icon Health* the Supreme Court clarified that the stream-of-commerce theory developed through *World-Wide Volkswagen* and its progeny is a subset of specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011) ("The North Carolina court's stream-of-commerce analysis elided the essential difference between case-specific and all-purpose (general) jurisdiction. Flow of a manufacturer's products into the forum, we have explained, may bolster an affiliation germane to specific jurisdiction.") The Court therefore rejects the notion that there is a third theory of personal jurisdiction apart from specific

11

jurisdiction and general jurisdiction, and considers Lifetime's arguments under the stream-of-commerce theory within the specific jurisdiction framework.

"Specific personal jurisdiction must be based on activities that 'arise out of' or 'relate to' the cause of action." *See, e.g. Silent Drive, Inc. v. Strong Industries*, 326 F.3d 1194, 1200 (Fed. Cir. 2003). The following facts are irrelevant because they have no ties to Lifetime's claims of patent infringement or to the products accused of infringement: QIMA Ltd.'s participation in tradeshows, QIMA Ltd.'s public discussions of its compliance with the Texas Bedding Law, and QIMA Ltd.'s job postings in Texas. (*See* Dkt. No. 23 at 11–12.)

Before analyzing whether the remaining facts are relevant to a personal analysis jurisdiction, it is first necessary to be precise about their nature. First, Lifetime contends that "QIMA [Ltd.] uses its inspection technology in its global streams of commerce, at least one of which includes a high likelihood of onsite inspection to perform 'quality control along the supply chain'" in Wills Point, Texas. (Dkt. No. 23 at 11 (citing Dkt. No. 20 at ¶¶ 5–6).) In this sentence, the "one of which" refers to "global streams of commerce." Thus, Lifetime argues that one of QIMA Ltd.'s global streams of commerce includes a "high likelihood of onsite inspection" in Wills Point, Texas. The First Amended Complaint clarifies that "this quality control is performed using the Accused Products." (Dkt. No. 20 at ¶ 6.) QIMA Ltd. does not rebut these points. Accordingly, the Court takes this as an example of one of QIMA Ltd.'s products appearing and being used in Texas. However, this sentence does not contain an allegation that QIMA Ltd. itself is using the products in Texas. In conjunction with the facts alleged in the First Amended Complaint, the sentence communicates two ideas: (1) that QIMA Ltd. uses its inspection technology in its global stream of commerce, and (2) there is a high likelihood that one of the global streams of commerce passes through Wills Point, Texas, where quality assurance inspections are performed using an

12

Accused Product. These two ideas are separate. Accordingly, the Court finds that Lifetime has not alleged that QIMA Ltd. uses its products in Texas.

Lifetime next contends that QIMA Ltd.'s decision to place the QIMA App on the app stores means that QIMA Ltd. has decided to broadly market the QIMA app, which in turn means that QIMA Ltd. has directed its products toward Texas. *See In re Toyota Hybrid Brake Litig.*, No. 4:20-CV-127, 2021 WL 2805455, at *11 (E.D. Tex. July 6, 2021) ("If a defendant brings its product to market en masse 'in an attempt to reach as broad a market as possible' and makes 'no effort to limit the states' in which the product will be sold, the likelihood that a court will find the defendant to have purposefully availed itself of the forum in question increases significantly." (citing *Vault Corp. v. Quaid Software Ltd.*, 775 F.2d 638, 640 (5th Cir. 1985)). QIMA Ltd. argues that its offering an app does not justify the exercise of personal jurisdiction over allegations of infringement claims directed to multi-component systems and methods. (Dkt. No. 25 at 1–3.) QIMA Ltd.'s argument misses the mark. Additional accused components do not negate the presence of an accused product in the forum state. However, merely placing an app on an app store (or even two app stores) is not evidence of a broad marketing scheme by QIMA Ltd.

The facts before the Court are quite simple: QIMA Ltd. placed an accused app on an app store that is accessible in Texas, and that app is in use in Texas. Before turning to the question of whether QIMA Ltd. is subject to personal jurisdiction pursuant to a stream-of-commerce theory of specific jurisdiction, the Court must confirm that an app is appropriately treated as a product.

In its reply brief, QIMA Ltd. relies on *Technology Patents* and *Choice Healthcare* to argue that an app is not appropriately treated as a physical product. (Dkt. No. 25 at 4–5 (citing *Technology Patents, LLC v. Deutsche Telekom AG*, 573 F. Supp. 2d 903, 916 (D. Md. 2008)). In Lifetime's sur-

reply brief, Lifetime argues that the cases relied upon by QIMA Ltd. are inapt. (Dkt. No. 27 at 2–3.)

Neither of these cases support QIMA Ltd.'s view. The *Technology Patents* court merely held that "it is doubtful that text messages themselves can be considered products in the stream of commerce." *Tech. Pats., LLC v. Deutsche Telekom AG*, 573 F. Supp. 2d 903 (D. Md. 2008), *aff'd sub nom. Tech. Pats. LLC v. T-Mobile (UK) Ltd.*, 700 F.3d 482 (Fed. Cir. 2012). Text messages are not bought and sold, apps are. The delivery of text messages is what is purchased. An app is acquired so that it may be used. In this way, apps are products, while text messages are not. The fact that some apps may sometimes be used to access other services, does not change their status as a product. Cellphones are purchased so that services may be accessed through them, and there is no serious dispute that a cellphone is a product. So too with apps. Moreover, the fact that an app is software does not negate the above conclusion. Software products, much like physical products, are acquired so that they may be used.

It is not clear that these facts warrant exercising personal jurisdiction over QIMA Ltd. pursuant to a stream-of-commerce theory of specific personal jurisdiction. The Supreme Court has articulated two views of the stream-of-commerce theory in *Asahi Metal Industry Co. v. Superior Court of California, Solano County*, neither of which controls. 480 U.S. 102, 107 S.Ct. 1026 (1987). The Federal Circuit summarized the competing views in *Celgard*:

> Justice Brennan, joined by three other justices, opined that mere foreseeability that the defendant's product would wind up in the forum state was sufficient to establish jurisdiction. To Justice Brennan, due process is satisfied when the defendant places a product into the stream of commerce while being "aware that the final product is being marketed in the forum State." *Id.* at 117, 107 S.Ct. 1026 (Brennan J., concurring in part). Due process is satisfied because the defendant directly benefits from "the retail sale of the final product in the forum State" and indirectly benefits from the "laws that regulate and facilitate commercial activity." *Id.* Justice O'Connor wrote separately and was joined by three justices. Justice O'Connor contended that something more than the foreseeability of entry of the defendant's

14

> products into the forum state was required because that low threshold does not guarantee that due process' purposeful-availment requirement is met. According to Justice O'Connor a "substantial connection ... between the defendant and the forum State" must arise out of the activities of the defendant that are "purposefully directed toward the forum State." Id. at 112, 107 S.Ct. 1026 (citations and quotation marks omitted). Merely placing "a product into the stream of commerce, *without more*, is not an act of the defendant purposefully directed toward the forum State." *Id.* (emphasis added)."

*Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1381 (Fed. Cir. 2015).

The facts of this case appear at this stage to split the difference of the two views. QIMA Ltd. undoubtedly knows that its app is available through app stores in Texas and that its product is in use in Texas, but there is nothing more. Accordingly, if Justice Brennan's view controlled, personal jurisdiction would lie, and the opposite would be true if Justice O'Connor's view controlled. However, the Federal Circuit has repeatedly refused to take a stance on which Justice's view to adopt. *See id.* at 1382, *AFTG–TG, LLC v. Nuvoton Tech. Corp.,* 689 F.3d 1358, 1364–65 (Fed. Cir. 2012) (discussing cases). Accordingly, it is not clear whether QIMA Ltd. is subject to personal jurisdiction under a stream-of-commerce theory.

### D. Jurisdictional Discovery is Warranted

The Federal Circuit has instructed in this context that it is a "cardinal rule that a court should not decide a legal issue when doing so is unnecessary to resolve the case at hand." *AFTG-TG*, 689 F.3d at 1364. Additionally, the Federal Circuit has sanctioned ordering jurisdictional discovery before taking a stance on the views espoused by Justices Brennan and O'Connor. *Id.* ("Subsequent panels of this court have followed that [cardinal] rule, finding that the evidentiary record before them made the result clear, or **could make the result clear after further discovery**, without requiring the court to take a side on the *Asahi* divide. (emphasis supplied)).

Lifetime, in its response, makes a bare request for jurisdictional discovery in footnote 8: "Lifetime respectfully requests jurisdictional discovery to further elucidate the relationships

between Qima Ltd., Qima/WQS, Qima (US) LLC, Qima LLC, and any other Qima owned entities involved in the stream of commerce that lead to accused products being imported and sold in this District." (Dkt. No. 23 at 12, n. 8.) Additionally, in the conclusion section of Lifetime's response brief, Lifetime requests that "the Court … grant jurisdictional discovery to further elucidate the relationships between Qima Ltd., Qima/WQS, Qima (US) LLC, Qima LLC, and any other Qima owned entities involved in the stream of commerce that lead to accused products being imported and sold in this District." (*Id.* at 14.) In reply, QIMA Ltd. argues that Lifetime has not met its burden of demonstrating the necessity of the discovery. (Dkt. No. 25 at 6–7.) Lifetime argues in sur-reply that it has met its burden. (Dkt. No. 27 at 5–6.)

The Court finds that Lifetime has not met its burden. Lifetime's requests in the footnote and conclusion section are conclusory and bare. Any additional arguments Lifetime raised about the necessity of the discovery in its sur-reply are waived. *Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*, 2019 WL 2959568, at *3 (E.D. Tex. Apr. 18, 2019) ("It is black-letter law that arguments raised for the first time in a reply brief are waived 'as a matter of litigation fairness and procedure.'" (citation omitted)). The bare requests for discovery are not sufficient.

However, at least one other court has held that held that district courts may order jurisdictional discovery *sua sponte* in connection with a motion made under Rule 12(b)(2), and this Court agrees. *Cano v. Assured Auto Grp.*, No. 3:20-CV-3501-G, 2021 WL 3036933, at *10 (N.D. Tex. July 19, 2021). Accordingly, to comply with the Federal Circuit's instruction, the Court finds that limited jurisdictional discovery into the extent of QIMA Ltd.'s contacts with Texas is appropriate.

## V. CONCLUSION

For the foregoing reasons, the Court finds that the First Motion (Dkt. No. 14) should be and hereby is **DENIED-AS-MOOT**.

For the foregoing reasons, the Court **ORDERS** the following jurisdictional discovery, which shall be completed within 90 days of this Order. Upon completion of jurisdictional discovery, QIMA Ltd. is **ORDERED** to file a supplemental brief not to exceed ten (10) pages explaining how the discovery supports its Motion, and Lifetime is **ORDERED** to file a response to such supplement, not to exceed ten (10) pages, within seven (7) days of the filing of Defendants' supplement, explaining how the jurisdictional discovery strengthens their opposition. The Court hereby **CARRIES** the Second Motion (Dkt. No. 21) until such discovery and supplemental briefing are complete.

It is further **ORDERED** that the above discovery will be conducted pursuant to the following terms:

1. **Interrogatories**: Plaintiff shall be permitted to serve seven (7) interrogatories on Defendants relating to the topics raised in Defendant's Motion. Service of such interrogatories shall occur no later than seven (7) days after entry of this Order, and written responses to the interrogatories are due within thirty (30) days after the interrogatories are served.

2. **Requests for Production**: Plaintiff shall be permitted to serve seven (7) requests for production on Defendant relating to the topics raised in Defendant's Motion. Service of such requests shall occur no later than seven (7) days after entry of this Order, and written responses to the requests are due within thirty (30) days after the requests are served, with document production to occur within seven (7) days of written responses being served.

3. **Depositions Pursuant to 30(b)(6) and 30(b)(1)**: Plaintiff may take up to seven (7) hours of 30(b)(6) and 30(b)(1) depositions relating to the topics raised in the Motion, with one of Defendant's 30(b)(1) deponents being the 30(b)(6) deponent.

4. **Miscellaneous**: Any party may later move to modify these limitations for good cause. The scope of the depositions and discovery taken must be related to the jurisdictional questions raised in Defendant's Motion. The jurisdictional discovery taken pursuant to this Order will not count against the limits set out in the Court's Discovery Order governing this case. The parties shall cooperate in good faith to tailor discovery to be commensurate with the expedited nature of jurisdictional discovery.

**So ORDERED and SIGNED this 1st day of March, 2024.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE